```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

COLLEEN SIMMONS,

                    Plaintiff,

vs.                                  Case No. 2:04-cv-459-FtM-33SPC

SANDY NEGRON, individually
and in his capacity as an
employee of the Department
of Corrections and JAMES V.
CROSBY, JR., in his capacity
as Secretary of the Department
of Corrections,

                    Defendants.
_____

**ORDER**

This matter comes before the Court on Defendants Sandy Negron and James Crosby, Jr.'s Dispositive Motion for Summary Judgment (Doc. # 20), filed on June 23, 2005.  Plaintiff Colleen Simmons filed a response to the Motion for Summary Judgment (Doc. # 38) on July 18, 2005.  Upon review of the Defendants' Motion for Summary Judgment and the Plaintiff's response, this Court finds that summary judgment in favor of the Defendants should be granted as to all counts.

    **I.**    **STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1989)("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . ."). Entry of summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. Where there is a "complete failure of proof concerning an essential element of the nonmoving party's case," all other facts presented by that party are rendered immaterial. Id. at 323.

The movant bears the responsibility for demonstrating the basis for the summary judgment motion. Id. A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996)(citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law.

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex, 477 U.S. at 323).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffrey v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).  If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples *ex rel.* Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

## II. BACKGROUND

The Plaintiff in this action, Colleen Simmons, was sentenced on November 13, 1998, after pleading guilty to charges of robbery and battery. (Doc. # 2, ¶ 8). Her sentence included a term of probation lasting five years and required that she complete the First Step Mothers and Infants program in Sarasota, Florida. (Doc. # 2, ¶ 8). Simmons's probation officer, Defendant Sandy Negron, requested a hearing on the Motion to Modify Probation and a hearing was set for March 18, 2002. (Doc. # 2, ¶ 8). The parties disagree over whether Simmons's probationary period had ended at the time of the hearing; however, they both seem to agree that Negron was concerned that Simmons did not have time to complete the program before her probationary period ended. (Doc. # 2, ¶ 8; Doc. # 21, ¶18).

On March 18, 2002, the date set for the hearing, Simmons and her attorney appeared in front of the Honorable Thomas Reese, Circuit Judge of Florida's Twentieth Judicial Circuit. (Doc. # 2, ¶ 9). Negron was unable to appear because he had suffered a dog bite on the previous day. (Doc. # 20, ¶ 4). According to the Circuit Court's minutes, Judge Reese "was advised that the defendant's probation terminated in January 2002." (Doc. # 2, Ex. C). The transcript of the proceedings reflects that Patricia Black, Simmons's attorney, volunteered that Simmons's probation had ended and claimed that Negron was concerned that there was nothing holding her in the program. (Transcript of March 18, 2002 Hearing, p. 3, lines 20-23). Based on this advice, Judge Reese advised

4

Simmons to complete the First Step Mothers and Infants program for her own good.  (Doc. #2, Ex. C).

After learning that Simmons had left the program, Negron received his supervisor's approval, on March 28, 2002, to file an Affidavit and Report Violation Report and Warrant with the Clerk of the Court.  (Doc. # 2, ¶¶ 10-11).  Unaware of the warrant, Simmons moved her family to Santa Rosa County, rented a home, and secured employment.  (Doc. # 2, ¶ 12).  She was subsequently arrested for violating her probation on or about October 23, 2002, and held in the Santa Rosa County Jail until she was transported back to Lee County on or about November 8, 2002.  (Doc. # 2, ¶ 13).  Simmons was then held on a "hold no bond" warrant until her hearing on November 18, 2002, before the Honorable Wallace Pack.  (Doc. # 2, ¶ 14).  A new probation officer appeared, named Brad Krzmarzick, who told Judge Pack that at the March 18, 2002 hearing, "the Court was led to believe that she was off probation in January so at that time I believe that Ms. Simmons was told she was off probation, that she didn't have to complete the program . . ."  (Transcript of Nov. 18, 2002 Hearing, p. 5, lines 2-5).  Based on Krzmarzick's statement, Chris Crowley, an Assistant State Attorney, advised the Court that the State could not in good faith prove that Simmons's violation was willful. (Transcript of Nov. 18, 2002 Hearing, p. 5, lines 8-11).  Judge Pack then terminated Simmons's probation and released her from custody.  (Doc. # 2, ¶ 16).

On September 14, 2004, Simmons filed the instant suit, alleging Negligent Hiring by James Crosby, Jr. (Count I), Negligent

Retention/Supervision by Crosby (Count II), Civil Rights Violations by Negron (Count III), and Civil Rights Violations by Crosby (Count IV).

### III. **ANALYSIS**

All four counts of Simmons's complaint arise from her belief that Negron obtained an arrest warrant and subjected her to an unlawful arrest, thereby violating her civil rights. This Court finds that there is a complete failure of proof concerning an essential element of Simmons's case, which renders all other facts that she presents immaterial; therefore, summary judgment is appropriate on all counts. Because summary judgment is appropriate, this Court does not address the issue of affirmative defenses that may or may not have been available at trial.

Simmons believes that her civil rights were violated; that is, she argues that she was subjected to an unconstitutional seizure when she was arrested for her probation violation. Her case seems to rest on the core assumption that her arrest was without probable cause; however, the facts indicate the opposite.

The Court begins its analysis noting that there are no facts to support Simmons's claim that Judge Reese held that her probation was terminated at the March 18, 2002, hearing. Simmons claims that "Judge Reese held that probation had been terminated in January 2002, and that [she] was no longer on probation and thus not required to complete the parenting program in Sarasota." (Doc. # 2, ¶ 9). As support for her claim, Simmons directs the Court's attention to the Minutes Sheet from the hearing before Judge Reese.

(Doc. # 2, ¶ 9).  Those minutes reflect that "[t]he court <u>was advised</u> that the defendant's probation terminated in January 2002" and that no further action was taken except that Judge Reese "advised [Simmons] to complete the First Step Mothers and Infants program."  (Doc. # 2, Ex. C)(emphasis added).

In taking the facts in the light most favorable to Simmons, this Court is not required to draw unreasonable inferences or illogical conclusions.  Based solely on the Minutes Sheet, this Court can not conclude that Judge Reese had "held" anything—much less that he issued a "clear and unequivocal order that [Simmons] was no longer on probation."  (Doc. # 2, ¶ 10).  The transcript of the hearing, to which Simmons directs the Court in her Response, speaks for itself.  (Doc. #38, p. 3).  For whatever reason, Simmons's attorney, Ms. Patricia Black, told the Court that Simmons's "probation officer called me because her probation terminated in January.  He was concerned that she's in the program and she's no longer on probation."  (Transcript of March 18, 2002 Hearing, p. 3, lines 20-23).  Judge Reese asked Ms. Black if Simmons was in violation of her probation and Ms. Black responded, "Oh no.  She's not in violation at all. [Her probation officer]'s just concerned that she's in the program and her probation is terminated, and he called me up and stated that there was nothing holding her in the program."  (Transcript of March 18, 2002 Hearing, p. 3-4, lines 1-5).  In response, Judge Reese stated "if probation is expired, it's expired."  (Transcript of March 18, 2002 Hearing, p. 4, lines 15-16).

7

Ms. Black's deposition testimony also clarifies that Judge Reese did not in fact "hold" that Simmons's probation had terminated, nor was there a "clear and unequivocal" order from him to that effect. In her deposition, Ms. Black was asked whether "any type of order was entered following the March 18 hearing." (Deposition of Patricia Black, p. 16, lines 9-10). She responded, "I would think not." (Deposition of Patricia Black, p. 16, line 11). When asked if she ever saw an order that day or after the fact she answered, "I have never received one. Let me look through [my files]. I do not have an order." (Deposition of Patricia Black, p. 16, lines 19-20). When asked if, aside from the conversation with Simmons's probation officer that she had described to Judge Reese, there was any other information to indicate that Simmons's probation had terminated prior to March 18, 2002, Ms. Black said "[n]o." (Deposition of Patricia Black, p. 17, line 5).

In point of fact, in spite of her claims that Judge Reese "held" that her probation had terminated in a "clear and unequivocal" order, Simmons has failed to point to one scintilla of evidence that Judge Reese did so. This Court is charged with construing all of the evidence in the light most favorable to Simmons; however, in the absence of facts favorable to Simmons on this issue, the Court is confined to rule based on the undisputed facts before it, all of which indicate that there was no holding that Simmons's probation had terminated and that Simmons was in fact still on probation when she left the Mothers and Infants

8

program.

In the absence of any indication that Judge Reese held that Simmons's probation was terminated, the most favorable conclusion that this Court may draw is that Simmons genuinely believed Ms. Black's erroneous representation that her probation had terminated. Based on her mistaken belief that her probation was terminated, Simmons left the Mothers and Infants Program, ending her participation even though she previously had been ordered to complete the program as part of her sentence. In the absence of any other proof, this Court cannot conclude that probation terminated simply because Ms. Black said so.

The foregoing factual inquiry is essential to this analysis, because Simmons has alleged that Negron violated her constitutional rights by subjecting her to an unreasonable seizure in contravention of the Fourth Amendment when he obtained a warrant for her arrest and subsequently had her arrested. See U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . ."). That Simmons was seized after the issuance of the violation of probation warrant is not within question; rather, the question is whether Negron acted with probable cause when he sought the warrant.

This Court concludes that Simmons was not subjected to an unreasonable seizure because Negron had probable cause to seek Simmons's arrest when she left the Mothers and Infants program, in

which her attendance was a mandatory condition of her probation. As the Supreme Court has said:

> [w]hether [an] arrest was constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officer[] had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.

Beck v. Ohio, 379 U.S. 89, 91 (1964).

Simmons seems to attack the probable cause requirement by stating that Negron did not have reasonably trustworthy information that would warrant a belief that Simmons had committed or was committing an offense. If this is her contention, then this Court disagrees. Simmons has failed to show that her probation was terminated either at or before the March 18, 2002, hearing; rather, she has merely shown that her attorney at that hearing mislead— even if it was in good faith— Judge Reese about the status of Simmons's probation. In the absence of any court order terminating her probation, it was reasonable for Negron to believe that Simmons had absconded when she left the Mothers and Infants program. His knowledge that Simmons had departed before her probation had terminated was sufficient to warrant a prudent probation officer to believe that she had absconded; thus, Negron had probable cause to seek the warrant.

Because Negron had probable cause to obtain the warrant for Simmons's arrest, the arrest was a constitutional seizure. Since the arrest was a constitutional seizure, Simmons's claim that it

was a violation of her civil rights is defeated.  If Simmons's civil rights were not violated, then all of the claims set forth in her Complaint must fail.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

1. Defendants Crosby and Negron's Motion for Summary Judgment (Doc. # 20) is hereby **GRANTED** as to all counts.  The Clerk of the Court is directed to enter judgment for the defendant and close the file.

**DONE** and **ORDERED** in Chambers in Fort Myers, Florida, this <u>3rd</u> day of November, 2005.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record